# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARILYN ELIZABETH :
SHELTON, :
          Plaintiff, :    No. 1:16-cv-01434
            :
     v. :    (Mariani, J.)
            :    (Saporito, M.J.)
NANCY BERRYHILL,[1] :
Acting Commissioner of :
Social Security, :
            :
          Defendant. :

## *REPORT AND RECOMMENDATION*

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Mary Elizabeth Shelton's claim for disability insurance benefits under Title II of the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for the preparation of the report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

For the reasons stated herein, we respectfully recommend that the decision of the Commissioner be **VACATED** and the case be **REMANDED** to conduct a new administrative hearing.

## I.    *Background and Procedural History*

Shelton is an adult individual born April 9, 1953.  Shelton was fifty-seven years old at the time of the alleged onset of disability—April 10, 2010. (Tr. 14,34).

Shelton's age at the onset date places her in a category of a "person of advanced age" under the Commissioner's regulations whose age significantly affects a person's ability to adjust to other work.    See 20 C.F.R. §416.968(d)(4).

On November 28, 2012, Shelton protectively filed an application for benefits under Title II of the Social Security Act alleging disability as of April 10, 2010. In her application, she alleged the following impairments prevent her from engaging in any work: brain injury-left temporal lobe, memory loss, auditory and visual issues, word recognition, verbal organization, headaches, and dizziness. (Tr. 97).

Shelton's claim was initially denied on May 3, 2013.  Thereafter, she filed a timely request for an administrative hearing.  Her request

was granted. Shelton appeared and testified before Administrative Law Judge ("ALJ") Michelle Wolfe on August 1, 2014  In addition, impartial vocational expert ("VE") Josephine A. Dougherty also appeared and testified during the administrative hearing. Shelton was represented by counsel at the hearing.

On October 24, 2014, the ALJ denied Shelton's application for benefits in a written decision.  On November 6, 2014, Shelton sought further review of her claim by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied on May 9, 2016.  This makes the ALJ's October 2014 decision the final decision subject to judicial review by this Court.

Shelton filed a timely complaint in this court on July 14, 2016. (Doc. 1).  In her complaint, Shelton alleges that the final decision of the Commissioner is not supported by substantial evidence and is contrary to law and regulation. On September 21, 2016, the Commissioner filed her answer, in which she maintains that the ALJ's decision is supported by substantial evidence.  (Doc.10).  This matter has been fully briefed by the parties and is ripe for decision.  (Docs. 12, 15).

At the time of the administrative hearing, Shelton was sixty-one

years old and resided alone in a second-floor apartment in Scranton, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 34). Shelton completed a high school education and four years of college. (Tr. 36).

Shelton possesses a driver's license and limits her driving to approximately two days per week. She becomes confused, has difficulty judging distances, has totaled her car in an automobile accident, and has driven into oncoming traffic. (Tr. 35). She stated she does not drive at night. (Tr. 36).

Shelton's past work includes: high school English teacher and add-on teacher at Lemoyne College. (Tr. 47). She stopped working following an accident where a large wooden rod holding a window shade in her classroom fell down and struck her on the head. (Tr. 37). As a result, Shelton suffered her second concussion within a period of weeks. She had fallen and struck her head on ice about six weeks earlier. (Tr. 294-295)

Shelton stated that she recently signed up for meals on wheels and physical therapy in her home. (Tr. 43-43). Shelton stated that her groceries are delivered to her. (Tr. 44). Shelton enjoys using her kindle

for reading. (Tr. 44). She also stated that she has problems reading. She cannot remember what she has read and often times confuses words. She confuses words even when communicating in person. (Tr. 44-45). She does not handle her own finances; her friends manage her finances because she confuses numbers. (Tr. 46).

Shelton stated that her family helps out when they can. They will bring her groceries and check in on her. (Tr. 52).

She does not bathe on her own due to balance issues. She stated that she showers less and less. Shelton stated there are days when she has trouble putting her arms out straight, and putting her arms in the air to wash her hair or put on a shirt. (Tr. 51).

She stated that she has difficulty buttoning her clothes. At times she has to dress herself a few times to adjust herself appropriately. She does not remember how to dress or she puts on her clothes inside-out. (Tr. 51-52). She stated that she goes out to dinner with friends and family, but often get confused when trying to do things. (Tr. 46).

Shelton stated that she has been diagnosed with fibromyalgia. The fibromyalgia causes her pain in her upper chest, shoulders, inside of the knees, shins, and ankles. (Tr. 48). She also suffers with pain in

her lower back from arthritis. (Tr. 48). Shelton stated that when the fibromyalgia is active, she finds it difficult to dress herself. (Tr. 51).

Shelton stated that she can sit for about one hour before she changes positions. She can stand for about thirty minutes before she changes positions. She could walk about half-a-block and then she has to take a break, and she could lift about two pounds. (Tr. 49).

Shelton stated she suffers from depression three to four days a week. She stated that her sleep patterns are irregular. She gets anxious often. Her energy levels change throughout the day especially if she is in a manic phase. She stated her concentration is minimal. She forgets easily and has trouble focusing on conversations. (Tr. 50).

Shelton stated that after being hit on the head with the wooden rod, she went for outpatient rehab with Dr. Sphinx, but had to stop in March 2011 because she could no longer drive. (Tr. 37)

She sees Christie Moore, a drug and alcohol therapist, weekly in Scranton. She has not used any type of drugs or alcohol since September 2013. Shelton has been seen by a psychiatrist in Syracuse, New York[2] and attends group therapy sessions on Tuesdays and

---

[2] Shelton resided in the Syracuse area at the outset of her disability

Thursdays for two hour sessions. (Tr. 39)  Shelton stated that she takes the bus to these sessions.  (Tr. 39).

Shelton was admitted to Regional Hospital in Scranton on July 9, 2014, for an accidental fall.  She was diagnosed also at the time of admission with urinary tract infection, dehydration, and contusion. (Tr. 41, 913).  Her neuropathy is getting worse in her fingers, hands, legs and feet.  The numbness in her fingers makes it hard for her to pick up her pills. (Tr. 80).

Shelton stated that she suffers from anxiety.  She finds it hard to focus and concentrate and she feels very uncomfortable.  (Tr. 50-51).

Shelton stated that she currently uses a cane (Tr. 42).

## II. *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable

proceedings.

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the

relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[3] that makes it impossible to do his or her previous work or

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

any other substantial gainful activity[4] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[5] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[6] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.*

---

techniques." 42 U.S.C. § 423(d)(3).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[5] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

## III. *Discussion*

In her October 24, 2014, decision denying Shelton's claim, the ALJ evaluated Shelton's application for benefits at each step of the sequential process. At step one, the ALJ found that Shelton did not engage in substantial gainful activity since April 10, 2010, the alleged onset date. (Tr. 16). At step two, the ALJ found the following impairments were medically determinable and severe during the relevant period: degenerative disc disease of the lumbar spine and fibromyalgia. (Tr. 16). At step three, the ALJ found that Shelton does not have an impairment or combination of impairments that met or

medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 during the relevant period. (Tr. 18).

Between steps three and four, the ALJ assessed Shelton's RFC. The ALJ found that Shelton has the capacity to perform a range of medium work as defined in 20 C.F.R. 404.1567(c), "except she should avoid concentrated exposure to vibrations and hazards, such as moving machinery and unprotected heights." (Tr. 18).

The ALJ's conclusions at steps four and five of the sequential evaluation process were based on the above-quoted RFC assessment and the VE's testimony. At step four, the ALJ found that Shelton was able to perform her past relevant work as a teacher. The VE testified that her past relevant work as a teacher was light, skilled work, as performed by Shelton and as generally performed. (Tr. 24).

Shelton contends the decision of the Commissioner is not supported by substantial evidence as it contains no mental health or cognitive limitations in a record that dictates there should be significant mental health and cognitive limitations.

Specifically, Shelton contends that much of the mental health opinion evidence that the ALJ relied upon suggests mental health

limitations that the ALJ either mischaracterized or failed to reconcile with the RFC determination; the ALJ failed to provide limitations for mental or cognitive limitations in determining Shelton's RFC; and the medical evidence, including mental health opinion evidence the ALJ purportedly relied upon indicates mental and/or cognitive limitations were required in the RFC determination.

**1. The ALJ improperly mischaracterized the well-supported opinions of the neuropsychologist, Allan Yozawitz, Ph.D., A.B.P.P., and the consultative examiner, Dennis Noia, Ph.D.**

In her decision, the ALJ accorded "great weight" to Dr. Yozawitz's opinion, but mischaracterized the opinion which read:

> It is my judgment that, following appropriate behavioral and psychopharmacological intervention, [Shelton] can successfully resume prior employment without restrictions. This could occur as soon as six weeks following the initiation of such treatment. Presently, however, she is disabled to a moderate degree by her affective disorder such that she cannot sustain reasonable expectations for vocational performance.

(Tr. 593-94).

In addition, Dr. Yozawitz's examination further suggested significant mental limitations and the treatment that he recommended included significant therapy, along with significant changes to her

already prescribed mental health medication. (Tr. 592-93).

Dr. Yozawitz diagnosed "bipolar I disorder." (Tr. 591). His examination and neuropsychological evaluation showed "disturbances in attention and concentration, in addition to psychomotor slowing." (Tr. 588). He found slow psychomotor performance across multiple measures; sequencing errors; poor block design; inconsistent concentration; a very defective quantitative score on a visual retention test; and numerous other deficiencies showing difficulty sustaining concentration, problems with memory, and slow psychomotor processing. (Tr. 589).

The ALJ allocated "great weight" to Dr. Yozawitz's findings, yet it did not include any mental health limitations in the RFC, Shelton contends that this in itself is highly confusing and renders the RFC without substantial support.

Shelton argues that the ALJ is simply picking and choosing through the opinion to support her ultimate conclusion. *See Jury v. Colvin*, No. 3:12-cv-2002, 2014 WL 1028439, at *8 (M.D. Mar. 14, 2014). ("[I]t is improper for the ALJ to pick and choose among medical reports, using portions of the evidence favorable to [her] position while ignoring

other evidence").

In addition, the ALJ accorded "great weight" to the opinion of consultative examiner Dr. Noia who opined that Shelton has mild to moderate limitation in her ability to learn new tasks. (Tr. 23). At an April 2013 psychological examination with Dr. Noia, Dr. Noia opined that Shelton has occasional mild limitations in maintaining attention and concentration for tasks; and mild to moderate limitations in ability to learn new tasks. (Tr. 606). Again the ALJ gave "great weight" to the opinion of Dr. Noia, but without limitations on learning tasks in her RFC assessment. Shelton argues that the Dictionary of Occupational Titles description of what is required of a teacher included "participates in faculty and professional meetings, education conferences, and teacher training workshops." Obviously, learning new tasks is part of a teacher's job. Teachers are also required to adhere to state guidelines and testing, which are subject to change. Technology is also a large part of the modern classroom, and teachers must learn new technology on an ongoing basis. It is obvious that moderate obstruction to learning new tasks would hinder Shelton's performance as a teacher and yet the ALJ offered no explanation why this mental limitation was not included

in the RFC. Shelton contends that the ALJ is simply ignoring mental limitations to support her ultimate decision. We agree.

The record in this case shows Shelton has "significant" mental limitations, and nowhere in the RFC is such a limitation accounted for or supported.

The record shows that Shelton suffered two concussions within six weeks in early 2010. (Tr. 293). Thereafter, she began experiencing significant headaches (Tr. 233, 236). In June 2010, Shelton began treating with Robert E. Todd, M.D., a neurologist (Tr. 233). Dr. Todd noted that Shelton feel on ice in March 2010, and in April 2010 she was hit on the head with the metal shade rod from her classroom window. (Tr. 233). Dr. Todd diagnosed her with a "double concussion" occipital neuralgia/cervical radiculopathy, and post traumatic headache syndrome. (Tr. 235). On July 28, 2010, Shelton reported to Dr. Todd with continuing headaches, wooziness, memory lapses, and difficulty with cognition. (Tr. 239). By August 2010, Dr. Todd noted that Shelton "is clearly not improving." (Tr. 242).

On October 20, 2010, Shelton treated with her primary care physician, John W. Michaels, M.D., and reported still suffering with

headaches, very tired and confused at times. (Tr. 290). Dr. Michaels diagnosed Shelton with post-concussion syndrome and referred her to Upstate Concussion Clinic, and opined that she was temporarily totally disabled. (Tr. 290).

In December 2010, Shelton treated with Deborah Spinks, Ph.D., at the concussion management program where she continued to report daily headaches, dizziness, nausea, and confusion. Shelton described difficulty with attention and distractability, memory difficulties, word-finding difficulties, reduced processing speed, and disorientation/confusion in stores or overstimulating environments. (Tr. 257-58). Upon examination, records show that Shelton was anxious, fatigued, and she was tangential in conversation and changed topics quickly. Shelton showed pressured speech, memory difficulties, and sometimes disorganized thought process. Dr. Spinks noted Shelton experienced several physical, cognitive, and emotional symptoms consistent with post-concussion syndrome. (Tr. 259). Dr. Spinks spoke to Shelton on how post-concussion symptoms put her at risk for additional head injuries and encouraged her to take regular rest breaks for any symptom exacerbation. (Tr. 259). Dr. Spinks also noted

premorbid psychiatric issues can be exacerbated by a concussion and suggested Shelton speak to her psychiatrist about medication increases to prevent manic episodes. (Tr. 259). Dr. Spinks opined that "at this time, she did not feel that Shelton could work in light of her post-concussion symptoms, as she appeared to be unsafe and at risk for further injury." Shelton continued treatment with Dr. Spinks and, records show that in January 2011, Dr. Spinks reported several physical, cognitive, and emotional changes consistent with post-concussion symptoms, including struggling with a deeper level of depression, problems with attention, memory, and word-finding. (Tr. 255). The record shows by March 2011, Shelton reported increased falling, being off-balance, and poor attention, concentration, and memory. She also reported that she retired from teaching. (Tr. 253).

Shelton continued to treat with Dr. Michaels through August 2011. She reported no longer treating at the concussion clinic because she was in the process of moving. (Tr. 253). Records show that during the August 2011 appointment, Shelton reported worsening headaches and anxiety. (Tr. 652).

On January 27, 2014, Michael G. Gilhooley, M.D., who had been

treating Shelton since she moved to Pennsylvania in 2013, opined that Shelton suffers from post-concussion syndrome, worsening cognitive problems, short and long-term memory loss, difficulty handling her financial affairs, increasing inability to concentrate and focus, difficulty discerning language (spoken and written), difficulty driving in unfamiliar surroundings and anxiety. Dr. Gilhooley opined that Shelton is permanently disabled. (Tr. 647).

In March 2014, Dr. Gilhooley completed a medical source statement and indicated post-concussion syndrome caused cognitive problems, memory loss, and difficulty concentrating. (Tr. 627). He opined that Shelton is seriously limited or unable to meet competitive standards in eight of the sixteen categories needed to perform unskilled work. (Tr. 627). Shelton's falls were listed throughout the record. (Tr. 629, 690, 795, 877).

On August 8, 2014, Shelton treated with Dr. Gilhooley and reported weakness, fatigue, confusion and increased somnolence, and instability. (Tr. 691).

One of the aspects of this case is the ALJ's treatment of the evidence relating to the mental impairments. There is substantial

evidence in the record that Shelton suffers from significant mental/cognitive impairments/limitations.

The overwhelming evidence indicates that Shelton has mental/cognitive limitations. In addition, the ALJ mischaracterized or omitted crucial opinion evidence from physicians' opinions which she attributed great weight. For example, the ALJ found that Dr. Yozawitz, a neuropsychologist, opined that Shelton would be able to return to her employment within six weeks following the initiation of appropriate behavioral and psychopharmacological intervention. (Tr. 22). However, the ALJ completely ignored Dr. Yozawitz's opinion where he stated that "[p]resently, however, [Shelton] is disabled to a moderate degree by her affective disorder such that she cannot sustain reasonable expectations for vocational performance." (Tr. 593-94). The ALJ failed to explain whether appropriate and psychopharmacological intervention were ever achieved. By choosing to omit the portion of Dr. Yozawitz's opinion where he found Shelton disabled, the ALJ mischaracterized his opinion. The ALJ simply picked and chose through the opinion to support her ultimate conclusion. *See Jury*, 2014 WL 1028439, at *8 ("[I]t is improper for the ALJ to pick and choose among medical reports,

using portions of evidence favorable to [her] position while ignoring other evidence."); *see also Giardine v. Heckler*, 639 F. Supp. 5, 6-7 (M.D. Pa. 1985) (finding error in ALJ's selective use of psychiatrist's report).

Further, Dr. Yozawitz made significant findings regarding Shelton's limitations attributed to a bipolar I disorder. He found that Shelton has affective dysfunction, associated disturbances of sustained concentration and psychomotor slowing; disturbances in attention and concentration; sequencing errors; poor block designs; inconsistent concentration; a very defective quantitative score on a visual retention test; problems with memory; and slow psychomotor processing. (Tr. 588-89, 591, 594).

On April 8, 2013, Shelton underwent a consultation with psychological examination with Dr. Noia. In her decision, the ALJ noted that Dr. Noia opined that Shelton has mild to moderate limitation in her ability to learn new tasks. (Tr. 23). During her examination with Dr. Noia, Shelton reported cognitive symptoms following her concussion, including short and long term memory deficits, word-finding deficits, concentration difficulty, disorientation to place, difficulty learning new material, planning difficulties, and organization

difficulties. It was Dr. Noia's opinion that Shelton has occasional mild to moderate limitation regarding her ability to learn new tasks. (Tr. 606). Despite giving great weight to Dr. Noia's opinion, the ALJ did not include Shelton's limitations regarding her ability to learn new tasks in the RFC.

Finally, Shelton began treating with her new primary care physician, Dr. Gilhooley, sometime in 2013. Dr. Gilhooley opined that Shelton is permanently disabled in that she suffers from post-concussion syndrome, and has worsening cognitive problems, in that "[s]he suffers from post-concussion syndrome and has worsening cognitive problems, short and long-term memory loss, difficulty handling her financial affairs, increasing an ability to concentrate and focus, difficulty discerning language (both spoken and written) . . . . In addition, all of the above cause anxiety to the patient." (Tr. 647). Further, Dr. Gilhooley related that Shelton is seriously limited or unable to meet competitive standards in eight of the sixteen categories needed to perform unskilled work. (Tr. 627). Despite these opinions, the ALJ gave little weight to Dr. Gilhooley's opinions claiming that there was nothing in the record to support such extreme limitations. On the

contrary, the record is replete with examples of Shelton having significant falls (Tr. 629, 690, 773, 795, 877). On August 8, 2014, Shelton reported weakness, fatigue, some confusion, increased somnolence and instability (Tr. 691). Dr. Gilhooley's examination found Shelton somnolent but arousable, and he diagnosed her with ADD, bipolar disorder, and a history of traumatic brain injury. (Tr. 692). These mental and/or cognitive limitations never made it to the RFC and as a result, we find that the RFC determination is unsupported by substantial evidence as mental and/or cognitive limitations are not listed thereon.

We find that the ALJ gave "great weight" to the opinions of Dr. Yozawitz and Dr. Noia, but then made an error when reaching a determination that Shelton could perform her past relevant work. The ALJ's decision does not address or reconcile this apparent inconsistency between the ALJ's reported reliance on the opinions and the contradictions between the opinions and the findings.

We believe that the ALJ failed to properly assess the opinions with regard to the mental/cognitive limitations in the RFC assessment. Therefore, the court is unable to recommend that the ALJ's decision is

supported by substantial evidence.

## V.   *Recommendation*

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Accordingly, we will order that the Commissioner's final decision denying Shelton's application for benefits under Title II of the Social Security Act be **VACATED** and remanded to conduct a new administrative hearing. We will further order that the Commissioner be directed to "reopen and fully develop the record before rendering a ruling" on the plaintiff's claim. Thomas v. Comm'r of Soc. Sec., 625 F.3d 798, 800 (3d Cir. 2010).

*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  September 15, 2017

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARILYN ELIZABETH    :
SHELTON,             :
        Plaintiff,    :    No. 1:16-cv-01434
                 :
        v.    :    (Mariani, J.)
                 :    (Saporito, M.J.)
NANCY BERRYHILL,[7]  :
Acting Commissioner of :
Social Security,       :
                 :
        Defendant.    :

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered

the foregoing Report and Recommendation dated  September 15, 2017.

Any party may obtain a review of the Report and Recommendation

pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a
> motion or matter described in 28 U.S.C. § 636(b)(1)(B)
> or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy
> thereof. Such party shall file with the clerk of court,
> and serve on the magistrate judge and all parties,

---

[7]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42
U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is
automatically substituted as the named defendant in place of the
former Commissioner of Social Security.

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: September 15, 2017